UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHAN ROBERT GONINAN,
a.k.a. NONNIE M. LOTUSFLOWER,

    Plaintiff,

v.

WASHINGTON DEPARTMENT OF CORRECTIONS et al.,

    Defendants.

CASE NO. 3:17-cv-05714-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: August 31, 2018

    This 42 U.S.C. § 1983 civil rights matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4.

    Plaintiff Nonnie M. Lotusflower (a.k.a. Nathan Robert Goninan) argues that defendants' policy regarding gender confirmation surgery is an unconstitutional blanket ban on its face and is also a de facto blanket ban because defendants' expert Dr. Stephen Levine, the doctor retained to evaluate plaintiff, allegedly believes gender confirmation surgery is never appropriate for incarcerated transgender individuals. However, Dr. Levine has not yet evaluated plaintiff and

plaintiff has not yet been denied gender confirmation surgery. Thus, plaintiff asks the Court to grant summary judgment based on a medical opinion that has not yet been rendered. As such, plaintiff has not carried her burden entitling her to summary judgment. Therefore, the Court recommends plaintiff's motion for summary judgment (Dkt. 48) be denied.

**BACKGROUND and PROCEDURAL HISTORY**

Plaintiff initially filed this action *pro se* in September of 2017. Dkt. 1. Plaintiff is a transgender woman who has been diagnosed with gender dysphoria. Dkt. 8. She argues that, though she was receiving gender affirming therapy when she was incarcerated in Oregon, she has since been transferred to the custody of the Washington Department of Corrections ("DOC"). *Id*. She argues that the DOC policy governing treatment of gender dysphoria contains a blanket ban on all gender confirmation surgery for transgender prisoners, even if such surgery is deemed medically necessary. *Id*. She argues she has received recommendations from medical experts stating gender confirmation surgery is medically necessary for her, but she argues that it is inaccessible because of the policy. *Id*. She further alleges that the DOC maintained this policy even though the DOC knew that individuals diagnosed with gender dysphoria have a greater risk of self-harm and other injury if they are denied gender confirmation surgery when it is medically necessary. *Id*. She requests that the Court enjoin Defendants from interfering with her medically necessary treatment, enjoin Defendants to provide her with adequate medical care including gender confirmation surgery, require defendants to house plaintiff in female housing after she receives surgery, and declare that the DOC's policy regarding gender dysphoria is unconstitutional both on its face and as applied. *Id*. at p. 9.

After receiving representation, plaintiff's counsel filed a motion for partial summary judgment, arguing that defendants' gender dysphoria policy is unconstitutional on its face

1  because it was a blanket ban on gender confirmation surgery, precluding surgery without any
2  consideration for medical necessity. Dkt. 48. Defendants responded, arguing the policy as it
3  stands provides for gender confirmation surgery in cases of medical necessity. Dkt. 52. Plaintiff
4  replied, noting that the policy at the time referenced the DOC's "Gender Dysphoria Protocol,"
5  which still prohibited "cosmetic or elective surgical procedures for the purpose of reassignment."
6  Dkt. 55, p. 2; Dkt. 50-1, p. 3.

7  In light of this, the Court ordered the parties to file supplemental briefing, addressing
8  whether the protocol does in fact prohibit all gender confirmation surgery. Dkt. 60. Defendants'
9  supplemental materials stated that, even under that protocol, they would not necessarily have
10  denied plaintiff's gender confirmation surgery, and that the DOC has since revised the protocol
11  to explicitly allow for gender confirmation surgery in cases of medical necessity. Dkt. 61; Dkt.
12  62-1, p.4. Plaintiffs responded, noting that the DOC did not revise the protocol until five days
13  after the Court ordered supplemental briefing. Dkt. 63. They also argue a de facto ban on gender
14  confirmation surgery is in effect because Dr. Levine, the doctor retained to evaluate plaintiff for
15  surgery, "has [already] concluded that gender reassignment surgery 'is <u>always</u> an elective
16  procedure.'" Dkt. 63, p. 4 (quoting *Norsworthy v. Beard*¸87 F. Supp. 3d 1164, 1188 (N.C. Cal.
17  2015)) (in that case, also involving a transgender prisoner seeking gender confirmation surgery,
18  Dr. Levine provided testimony about gender affirming therapy in the prison context).

19  **STANDARD OF REVIEW**

20  The purpose of summary judgment is to avoid unnecessary trials when there is no dispute
21  over the material facts before the court and the moving party is entitled to judgment as a matter
22  of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds*
23  *by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). The moving party is entitled

to summary judgment if the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). To determine if summary judgment is appropriate, the court must consider whether particular facts are material and whether there is a genuine dispute as to the material facts left to be resolved. Fed. R. Civ. P. 56(c). The materiality of a given fact is determined by the required elements of the substantive law under which the claims are brought. *Anderson*, 477 U.S. at 248. Factual disputes that do not affect the outcome of the suit under the governing law will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). However, when presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro se complaint will be liberally construed . . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The opposing party cannot rest solely on his pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249-50. In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or

answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). However, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

## DISCUSSION

The Ninth Circuit has held that a categorical denial of medically necessary care based only on administrative policy constitutes deliberate indifference. *Colwell v. Bannister*, 763 F.3d 1060, 1063 (9th Cir. 2014). A denial of gender confirmation surgery based only on a policy that does not take medical necessity into account, especially if a defendant is aware of a prisoner's gender dysphoria and medical opinions recommending surgery, also constitutes deliberate indifference. *Rosati v. Igbinoso*, 791 F.3d 1037, 1039-40 (9th Cir. 2015). Other circuits have similarly held that denial of gender confirmation surgery, even in the presence of other gender affirming therapies such as hormone therapy, can constitute deliberate indifference if the denial is a blanket ban, rather than an individualized medical determination based on medical data. *See De'lonta v. Johnson*, 708 F.3d 520, 525-26 (4th Cir. 2013); *Fields v. Smith*, 653 F.3d 550, 554-55 (7th Cir. 2011); *but cf. Kosilek v. Spencer*, 774 F.3d 63, 86 (1st Cir. 2014) (finding that the failure to provide gender confirmation surgery, in light of the plethora of other treatments a prisoner was receiving and in light of several contradictory medical opinions regarding the necessity of gender confirmation surgery, did not state a claim).

In addition, the question the Court asks when determining whether declaratory judgment is appropriate is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Bayer v. Neiman Marcus Group,*

1 *Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) (quoting *MedImmune, Inc.v. Genentech, Inc.*, 549 U.S.
2 118, 127 (2007)). Similarly, when determining whether injunctive relief is appropriate, "[a]
3 request for injunctive relief remains live only so long as there is some present harm left to
4 enjoin." *Id*. at 864 (quoting *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir.
5 1995)). If there is no case or controversy – that is if the alleged constitutional violations have
6 ceased –requests for both declaratory and injunctive are moot and should be dismissed. *Id*. at
7 864, 868.

8     **I.    Blanket Ban On Its Face**

9     The policy that plaintiff challenges placed treatment for gender dysphoria as a level II
10 classification, meaning treatment would be provided if the treatment was deemed medically
11 necessary. Dkt. 54-1, p. 153. However, the policy referenced the "Gender Dysphoria Protocol,"
12 which, when plaintiff filed her motion for summary judgment, indicated that "[c]osmetic or
13 elective surgical procedures for the purpose of reassignment . . . are considered Level III by the
14 Offender Health Plan." Dkt. 50-1, p. 3. This means surgical procedures for the purpose of
15 reassignment would be deemed never medically necessary. *Id*. Plaintiff alleges that the policy on
16 its face was a blanket policy precluding any gender confirmation surgery for any transgender
17 inmate under any circumstances and requests declaratory and injunctive relief. Dkt. 48.

18     In response, defendants note that the Gender Dysphoria Protocol has now been amended.
19 Dkt. 61. The amended language in the protocol now provides "[o]ther forms of treatment[:] . . .
20 [g]ender confirmation surgery," and provides a list of criteria for determining whether a prisoner
21 would be eligible for surgery, including having been on hormone therapy for at least one year
22 and a consultation and evaluation by an "outside expert consultant." Dkt. 62-1, p. 3. The protocol
23 now also includes additional guidance on the logistics of providing gender confirmation surgery.
24

*Id.* at p. 4. Because the protocol now explicitly includes a path for prisoners to acquire gender confirmation surgery, it cannot be said that it contains an unconstitutional blanket ban on its face. Since there is no longer a blanket ban, thus no longer a case or controversy as to the facial blanket ban, plaintiff cannot acquire the injunctive relief she requests in her motion for summary judgment.

Further, defendants' previous protocol prohibited "cosmetic or elective surgical procedures for the purpose of reassignment." Dkt. 50-1, p. 3. As defendants note, that does not necessarily prohibit "sex reassignment surgery when it is found to be medically necessary." Dkt. 61, p. 1. With all facts and inferences read in the light most favorable to the non-moving party, the protocol prohibited only "cosmetic or elective" surgical procedures, not surgical procedures deemed to be medically necessary, even before it was amended to provide additional guidance.

Because the protocol now explicitly includes a path to acquire gender confirmation surgery, and because, on its face, the original protocol prohibited cosmetic or elective, rather than medically necessary, surgery, plaintiff has not supported her burden as to the facial unconstitionality of the policy. Therefore, the Court recommends plaintiff's motion for summary judgment be denied as to this allegation.

## II.     Voluntary Cessation of Conduct

Plaintiff also argues that, even though defendants have changed the verbiage of the policy, this change is not sufficient to demonstrate that plaintiff's alleged harms are not likely to recur. Dkts. 55, 63. The voluntary cessation of allegedly illegal conduct will render a motion for an injunction moot if it is "absolutely clear" that the conduct sought to be enjoined could not reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Env. Serv. (TOC), Inc.*, 528 U.S. 167, 188-89 (2000). Here, defendants have provided a newly updated protocol that

1  explicitly addresses gender confirmation surgery and provides an explicit method for acquiring
2  such surgery. Dkt. 62-1. Plaintiff has offered nothing but speculation as to the DOC altering the
3  policy back to its original form or to otherwise amend it to exclude gender confirmation surgery.
4  Because defendants have provided unequivocal proof that the protocol has been updated to
5  explicitly provide for gender confirmation surgery, and because plaintiff offers nothing but
6  speculation that defendants will somehow amend it again, the Court finds plaintiff's argument
7  unpersuasive. Therefore, the Court recommends plaintiff's motion for summary judgment be
8  denied on this ground.

### III. Blanket Ban As Applied

Plaintiff finally argues that, even if the Court finds the policy is not a blanket ban on its face and that the likelihood of a future violation does not warrant review, the protocol is a blanket ban as applied. Dkt. 63. She argues that Dr. Levine, the expert that defendants have retained to examine plaintiff and determine if gender confirmation surgery is medically necessary, "has [already] concluded that gender reassignment surgery 'is always an elective procedure.'" Dkt. 63, p. 4 (citing *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1188 (N.D. Cal. 2015)).

However, because plaintiff is the moving party, she carries the burden of establishing that there are no disputed material facts and that she is entitled to judgment as a matter of law. Neither party has submitted evidence that plaintiff has completed her evaluation, much less provided evidence that plaintiff has been denied gender confirmation surgery by Dr. Levine because he believes it is never medically necessary. Plaintiff has only provided statements made in one other case to support her position. One set of statements from an unrelated case in 2015 is not enough for this Court to conclude that defendants' medical expert has a personal bias that

would effectively ban all transgender prisoners, including plaintiff, from access to medically necessary gender confirmation surgery. Thus, based on the record before the Court, plaintiff has not shown that the DOC's protocol is a de facto blanket ban.

Because plaintiff has not shown that plaintiff is absolutely barred from ever acquiring gender confirmation surgery based on the DOC's protocol, she has not shown that she is entitled to summary judgment as to the alleged de facto blanket ban. Therefore, the Court recommends her motion for summary judgment be denied as to this allegation.

## CONCLUSION

For the reasons set forth above, the Court recommends that plaintiff's motion for summary judgment (Dkt. 48) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on August 31, 2018 as noted in the caption.

Dated this 15th day of August, 2018.

J. Richard Creatura
United States Magistrate Judge