UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHAN ROBERT GONINAN,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | CASE NO. 3:17-cv-05714-BHS-JRC<br><br>ORDER DENYING PROTECTIVE ORDER AND DENYING SANCTIONS |

This 42 U.S.C. § 1983 civil rights matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4. Before the Court is defendants' motion for a protective order and motion for sanctions. Dkt. 67.

Plaintiff requests that the Court enter a protective order prohibiting defendants from interacting with plaintiff regarding litigation matters, and requests sanctions against defendants for allegedly allowing a psychologist to ask plaintiff inappropriate litigation questions. However, defendants have represented that the assessment is now complete, and will not be revisited for

two years, so there is no specific harm that needs to be addressed at this time. Since defendants have represented that they were unaware of the offending questions until after the events in question, plaintiff's motion for sanctions is denied.

However, the questions asked of plaintiff were clearly related to this litigation and were inappropriate. In the future, defendants will be held accountable for the actions of their agents and employees as they relate to how they conduct themselves in this litigation. Sanctions may be appropriate in the future if defendants do not take appropriate measures to ensure that such conduct does not occur in the future either by them – or by their agents and employees.

## BACKGROUND

Plaintiff is a transgender prisoner who was awaiting a readiness assessment to determine whether she was a candidate for gender confirmation surgery in June of this year. *See* Dk. 67, p. 2. On June 18, 2018, non-party Dr. Stephen Levine -- a psychologist contracted by the Department of Corrections ("DOC") to evaluate plaintiff -- interviewed plaintiff as part of the readiness assessment. Dkt. 75, p. 2. After returning to his office in Ohio, Dr. Levine sent several additional questions to non-party Dr. Timothy Richel, a psychologist employed by defendant DOC at the Airway Heights Corrections Center ("AHCC") where plaintiff was housed. *Id.*; Dkt. 68-6, p. 3. The questions that plaintiff alleges were improper are as follows:

a. Do you realize that the ACLU has a motive beyond getting you surgery? If so, what is it? Why do you think you, in particular, were selected and not many others?
b. Do you realize what this lawsuit means for you in terms of more evaluations, deposition by lawyers asking personal questions, trial, appeal of whatever verdict is reached, risk that a verdict will take a long time to be given and that surgery if granted may not occur for another several years.
c. This process builds up your hope for surgery and asks you to be convincingly distressed—suffering from your genitals[—]asks you to exaggerate your distress, and yet it may fail to win in the court. What do you think this would do to your emotional life?

Dkt. 68-9, p. 3.

The record reflects that Dr. Richel asked plaintiff these questions on or about June 27, 2018, and provided a report back to Dr. Levine. Dkt. 68-9, p. 3. Dr. Levine included plaintiff's answers to these questions when preparing his report on plaintiff's readiness for gender confirmation surgery. Dkt. 68-6, p. 3. The record also reflects that plaintiff's counsel were unaware that plaintiff was asked the follow-up questions at the time, Dkt. 68-7, and that neither defendants, nor their counsel realized that Dr. Levine had emailed Dr. Richel, Dkt. 74. Defendants also state that they were unaware that Dr. Richel had asked plaintiff additional questions until after they were contacted by plaintiff's counsel. Dkt. 74. Plaintiff has also filed a declaration from Dr. Randi C. Ettner, an expert retained by plaintiff, indicating the follow-up questions were not appropriate to determine whether an individual is a candidate for gender confirmation surgery. Dkt. 69, p. 2.

After meeting and conferring with defendants, plaintiff, through counsel, filed a motion for a protective order and sanctions. Dkt. 67. Plaintiff argues that defendants engaged in bad faith litigation tactics when they asked plaintiff litigation related questions, despite being asked multiple times not to interact with plaintiff regarding this litigation and without notifying plaintiff's counsel. Dkt. 67, pp. 6-7. Plaintiff specifically requests that the Court prohibit defendants from: "(1) contacting her regarding any litigation related matter without first providing her attorneys with notice; (2) engaging in conduct intended to harass and/or intimidate [plaintiff]; and (3) engaging in conduct intended to disrupt the relationship between [plaintiff] and her attorneys of record in this case." *Id.*, p. 7. Plaintiff also requests that the Court sanction defendants for contacting plaintiff regarding ongoing litigation because it constituted bad faith litigation tactics. *Id.*, pp. 8-9. Plaintiff argues that the follow-up questions noted above constitute

1 | an attempt by defendants to instill fear in plaintiff, to dissuade her from continuing the litigation,
2 | and to tamper with the relationship between plaintiff and her counsel. *Id.*, pp. 8-11.

Defendants responded, arguing that a protective order is unnecessary because defendants do not require any additional information to complete plaintiff's readiness assessment, and further that the questions were not asked for an improper purpose. Dkt. 73. They also argue that the mere act of asking follow-up questions to ensure a comprehensive examination does not amount to bad faith litigation warranting sanctions. *Id*. They finally note that they were not aware of the second interview until after the fact. *Id*. Plaintiff filed a reply. Dkt. 76.

## DISCUSSION

### I. Protective Order

The Court may issue a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Though more commonly used during discovery to insulate sensitive discovery materials, a protective order may also be used to protect a party or potential party from intimidation or retaliation. *See*, *e.g.*, *Ben David v. Travisono*, 495 F.2d 562, 564-65 (1st Cir. 1974) (analyzing and upholding a protective order against prison guards who were beating prisoner plaintiffs in retaliation for filing a class action lawsuit); *Wood v. Martin*, No. 3:04-cv-00099-BLW, 2013 WL 1412324 at *2 (D. Idaho April 8, 2013) (finding a prisoner had not shown good cause why a protective order to protect certain inmates from intimidation and retaliation from prison staff). The moving party must demonstrate "good cause" to warrant a protective order. Fed. R. Civ. P. 26(c). A protective order under Rule 26 is appropriate if the moving party can demonstrate a specific harm that would result if the protective order is not issued, as well as good cause. *See Beckman Industries,*

*Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (noting allegations of harm must be specific or substantiated by articulate reasoning).

Plaintiff requests that the Court enter a protective order against defendants. As an initial matter, the Court finds that the questions asked of plaintiff were inappropriate. The Court fails to understand how the ACLU's motivation in representing plaintiff is at all relevant to whether plaintiff is a candidate for gender confirmation surgery. Furthermore, the insinuation that plaintiff has to appear "convincingly distressed" and "to exaggerate [her] distress" does not appear to be at all related to gender confirmation surgery, but rather suggest that plaintiff should not be pursuing this litigation because it will adversely impact her health. Coming from a person hired by one of the defendants, this type of questioning is entirely unnecessary and inappropriate. Plaintiff should not be asked to choose between pursuing her health and pursuing her rights through litigation. These questions should not have been asked. Period.

Defendants argue that Dr. Levine and Dr. Richel are not defendants in this action and, therefore, a protective order against defendants would be ineffective because it would not restrain the individuals who actually engaged in the offensive conduct. The Court is advised that Dr. Levine was hired by defendant DOC and that defendant DOC employs Dr. Richel. Defendants should take all reasonable steps to advise those they employ and those with whom they contract not to conduct themselves in a manner that interferes with any party's access to justice. The Court reserves the right to utilize its inherent powers against any party who fails to do so, if conducted in bad faith. *See infra.*

Defendants also argue that a protective order is unnecessary because the readiness assessment has been completed, and no additional information relating to this litigation will be sought from plaintiff. Dkt. 73, pp. 5-6. They have provided evidence indicating that Dr. Levine

has concluded that gender confirmation surgery is not medically necessary at this time because of plaintiff's mental stability, and that the next assessment will not be for two more years. Dkt. 74, p. 3. Dr. Levine confirms that he does not require any additional information from plaintiff at this time. Dkt. 75, p. 3. Thus, at this point in the litigation, defendants have no need to discuss this litigation with plaintiff. As such, plaintiff has not shown good cause for a protective order restraining defendants from discussing this litigation with her.

However, the Court reserves the option of reevaluating the appropriateness of a protective order should further interviews become necessary.

**II.     Sanctions**

The Court has inherent power to sanction parties or their attorneys for improper conduct. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43-46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980); *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). The Court's "inherent power 'extends to a full range of litigation abuses.'" *Find*, 239 F.3d at 992 (quoting *Chambers*, 501 U.S. at 46-47). However, to sanction a party under the Court's inherent powers, the Court must make a specific finding of "bad faith or conduct tantamount to bad faith." *Fink*, 239 F.3d at 994. Mere recklessness is insufficient to impose sanctions – rather, "an additional factor such as frivolousness, harassment, or an improper purpose" is also required. *Id*. at 993-94. Sanctions may be imposed on a party who acted with an improper purpose even if the acts was "a truthful statement or non-frivolous argument or objection." *Id*. at 992.

Again, as noted above, the Court finds the questions asked of plaintiff to be wholly inappropriate. However, the alleged misconduct occurred purportedly unbeknownst to defendants. Dkts. 68-6, 68-9. Because neither defendants nor their counsel purportedly had knowledge of Dr. Levine's questions or Dr. Richel's interview with plaintiff, the Court finds that

plaintiff has not demonstrated bad faith or improper purpose on defendants' part and so sanctions are inappropriate at this time.

The Court recognizes that supervisory liability is not appropriate in a § 1983 claim. But the same cannot be said of parties being held accountable for an agent's actions in litigation practice. *See F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc.*, 244 F.3d 1128, 1144 (finding corporation could be held liable for sanctions based on the conduct of an employee when employee acted as an "agent of his corporation"). Though the Court has found defendants had no knowledge of these inappropriate litigation related questions, the Court also finds this lack of knowledge unacceptable and bordering on reckless. Defendants cannot avoid all responsibility for their agents' actions simply by stating they did not know what their employees and contractors were doing. Defendants are therefore advised to take steps necessary to better control their agents and employees in the future, or the Court will reconsider whether sanctions are appropriate.

**CONCLUSION**

For the reasons stated above, plaintiff's motion for a protective order and sanctions (Dkt. 67) is denied without prejudice.

Dated this 26th day of September, 2018.

J. Richard Creatura
United States Magistrate Judge