UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHAN ROBERT GONINAN, a.k.a. NONNIE M. LOTUSFLOWER,

    Plaintiff,

v.

WASHINGTON DEPARTMENT OF CORRECTIONS, et al.,

    Defendants.

CASE NO. C17-5714 BHS-JRC

ORDER ADOPTING REPORT AND RECOMMENDATION AND REREFERRING TO MAGISTRATE JUDGE

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable J. Richard Creatura, United States Magistrate Judge, Dkt. 71, and Plaintiff Nathan Goninan, a.k.a. Nonnie Lotusflower's ("Lotusflower") objections to the R&R, Dkt. 79.

Lotusflower is a transgender woman currently incarcerated by Defendant Washington State Department of Corrections ("DOC"). Dkt. 1-1. Lotusflower experiences symptoms of gender dysphoria and has been diagnosed with gender dysphoria. Dkt. 1-2 at 7–8, 29.[1]

On October 27, 2017, Lotusflower filed a pro se civil rights complaint alleging that DOC's failure to provide her with medically necessary gender reassignment surgery violates the Eighth and Fourteenth amendments to the United States Constitution. Dkt. 8

---

[1] Unless otherwise noted, the Court refers to the electronic case file pagination, which can be found in the heading added to all documents filed electronically with the Court.

at 1. Lotusflower obtained representation, and the parties filed a stipulated motion to stay the case until April 2018. Dkts. 39, 45. Before the stay ended, on March 16, 2018, DOC revised its Offender Health Plan ("OHP"), moving surgical intervention for gender dysphoria from Level III (not medically necessary or not provided under the OHP) to Level II (medically necessary under certain circumstances). Dkts. 50-1, 53, 53-1.

On April 19, 2018, Lotusflower moved for partial summary judgment on the facial unconstitutionality of the gender dysphoria policy under the revised OHP. Dkts. 48, 49-1. On May 3, 2018, DOC responded that the revised OHP "does not prohibit sex reassignment surgery when it is found to be medically necessary." Dkt. 52 at 3. On May 11, 2018, Lotusflower replied, arguing that despite moving gender reassignment surgery to Level II, the revised OHP "still incorporates by reference DOC's Gender Dysphoria Protocol—and that protocol maintains the blanket ban." Dkts. 50-1, 55 at 1–2.

The revised OHP did refer DOC medical providers to an internal "protocol" document for treatment of gender dysphoria. *See* Dkts. 49-1, 50-1. In turn, this written protocol prohibited "elective or cosmetic surgical procedures for the purpose of reassignment." Dkt. 50-1 at 3. As the OHP continued to reference the original gender dysphoria protocol ("GDP") banning cosmetic or elective surgical procedures, it was therefore uncertain whether the OHP barred medically necessary gender reassignment surgery, even as revised. *See* Dkt. 60. On June 14, 2018, Judge Creatura ordered DOC to

provide supplemental briefing addressing the relationship between the two documents.[2] *Id.*

On July 2, 2018, DOC responded that the language of the original GDP permitted gender reassignment surgery when medically necessary. Dkt. 61. However, DOC also stated that it had now revised the GDP "to include language addressing the criteria for gender confirmation surgery when such treatment has been found to be medically necessary." Dkt. 62-1. DOC revised the GDP on June 19, 2018, five days after Judge Creatura issued the order requesting supplemental briefing. Dkt. 62 at 2. The bulk of Lotusflower's supplemental reply thus devolved into a discussion of whether DOC engaged in conduct designed to evade judicial review of its policies. Dkts. 63, 66. Lotusflower also argued that, based on the doctor DOC recently hired to perform readiness assessments for gender reassignment surgeries, DOC has "simply replaced one ban with another by hiring an 'expert' who has concluded that gender reassignment surgery 'is always an elective procedure.'" Dkt. 63 at 4.

On August 15, 2018, Judge Creatura issued the R&R recommending that this Court deny Lotusflower's motion. Dkt. 71. The R&R concluded that, when viewed in the light most favorable to non-moving party DOC, the original GDP only prohibited transgender inmates from accessing cosmetic or elective surgical procedures, rather than banning medically necessary gender reassignment surgery. Dkt. 71 at 7. The R&R also concluded that the revised GDP now explicitly includes a path to gender reassignment

---

[2] The Court considers the OHP and the GDP together when reviewing the constitutionality of DOC's policy towards gender dysphoria, as did Judge Creatura. Dkt. 71 at 7.

surgery. *Id.* In other words, although courts have held blanket bans or per se protocols denying or limiting medical treatment unconstitutional, Judge Creatura found that each of DOC's protocols for gender dysphoria independently established a pathway to gender reassignment surgery when medically necessary. *Id.* Based on these findings, the R&R recommends denying Lotusflower's motion because she failed to establish that DOC's gender dysphoria policy is unconstitutional on its face. *Id.* The R&R also rejects Lotusflower's "blanket ban as applied" challenge because she failed to provide evidence that the doctor categorically denies every request for gender reassignment surgery. *Id.*

On August 30, 2018, Lotusflower objected, arguing that an as-applied challenge was not at issue before the Court. Dkt. 79. Lotusflower also believes that the R&R ignored evidence showing that DOC modified its gender dysphoria policies in an attempt to evade judicial review, and further objects on that basis. *Id.* On September 13, 2018, DOC responded. Dkt. 80. On December 19, 2018, Lotusflower supplemented her objections with two recent authorities. Dkt. 86.

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. *Id.*

**A.    Facial Challenge**

Lotusflower first argues that the R&R "failed to consider the very purpose of the voluntary cessation doctrine" which is to "foreclose efforts by defendants to evade judicial review by temporary and/or ineffectively modifying their behavior in the short

term in an effort to moot ongoing litigation." Dkt. 79 at 2, citing *Bell v. City of Boise*, 709 F.3d 890, 898 (9th Cir. 2013). Lotusflower's objection has some merit. The R&R's voluntary cessation discussion was admittedly brief. *See* Dkt. 71 at 7–8. The R&R did not address why DOC's conduct did not implicate the voluntary cessation doctrine, or analyze the voluntary cessation factors. *Id.* More importantly though, the R&R relied on the revised GDP's explicit pathway to reassignment surgery in order to defeat Lotusflower's argument that the original GDP banned reassignment surgery, thus appearing to negate the purpose of voluntary cessation doctrine. *Id.*

Nonetheless, the R&R went on to separately conclude that the original GDP permitted medically necessary gender reassignment surgery when viewed in the light most favorable to DOC, and therefore was not a blanket surgical ban. Dkt. 71 at 7. The Court agrees with this conclusion. After the OHP was revised, the DOC Assistant Secretary for Health Services declared that if gender reassignment surgery was deemed medically necessary, the OHP would cover the surgery at Level I (medically necessary). Dkt. 53, ¶¶ 4–5. DOC further stated that regardless of the language in the original GDP, the revised OHP would not prohibit a transgender inmate from receiving gender reassignment surgery, if surgery was deemed medically necessary following a readiness assessment. Dkts. 61, 62. Moreover, the original GDP did not explicitly prohibit medically necessary surgery. Dkt. 50-1. When viewing the facts and inferences in the light most favorable to DOC, a reasonable juror could therefore conclude that the original GDP prohibited "only 'cosmetic or elective' surgical procedures, not surgical procedures deemed to be medically necessary.'" Dkt. 71 at 7. The R&R thus correctly concluded that

Lotusflower failed to meet her burden to establish the facial unconstitutionality of the original policy, and the Court will adopt it on that basis.

Last, the Court's conclusion that Lotusflower failed to establish the facial unconstitutionality of the original GDP moots the need to discuss voluntary cessation (and Lotusflower's supplemental authorities) in context to the revised GDP.[3] Lotusflower's voluntary cessation objection is therefore denied.

**B.     As Applied Challenge**

Next, Lotusflower objects to the R&R's as applied recommendation. Lotusflower states that she only challenged the policy facially, and the as applied issue "had not been briefed and was not properly before the court." Dkt. 79 at 4. In her initial motion for partial summary judgment, Lotusflower did challenge the policy facially. *See* Dkt. 48. In supplemental briefing, however, Lotusflower later argued that the revised GDP was a "de facto" ban because it required DOC to consult an outside medical expert in gender dysphoria, and DOC had chosen an expert who, Lotusflower alleged, believes it is never medically necessary for *any* prison inmate to receive gender reassignment surgery. Dkt. 63 at 4. While a challenge to a "de facto" ban may sound like an as-applied challenge in disguise, Lotusflower's arguments demonstrate that she continued to challenge the policy relative to all DOC inmates, consistent with a facial challenge. Dkt. 63.

---

[3] Beyond the GDP revision, Lotusflower also argues that DOC waited to revise the OHP until just before the mutually-agreed upon stay ended. Dkt. 55 at 5–6. Because Lotusflower herself moved for judgment under the revised OHP, citing its internal reference to the original GDP as the foundation of her motion, Dkts. 49-1 at 129, 55 at 2, the Court ignores this argument.

The R&R addressed Lotusflower's de facto ban argument under a section titled "Blanket Ban As Applied." Dkt. 71 at 8. However, this section recommended finding that Lotusflower had not established sufficient evidence to conclude that DOC's choice of medical expert "would effectively ban all transgender prisoners, including plaintiff, from access to medically necessary gender confirmation surgery." Dkt. 71 at 8–9. It then went on to conclude that Lotusflower failed to show that she is absolutely barred from ever qualifying for surgery under the alleged de facto ban. Dkt. 71 at 9. At the very least, the use of the key phrase "as applied" may have led to confusion. The Court therefore concludes that Lotusflower merely supplemented her facial challenge with her "de facto" ban argument, which the R&R then addressed and denied. The Court adopts the R&R on that basis, leaving Lotusflower's as applied challenge intact in all respects. Given this conclusion and the fact that the dispositive motion deadline does not expire until March 2019, further proceedings before Judge Creatura are warranted. Fed. R. Civ. P. 72(b)(3).

Therefore, having considered the R&R, Plaintiff's objections, and the remaining record, the Court does hereby find and order as follows:

(1) The R&R, Dkt. 71, is **ADOPTED**;

(2) Lotusflower's motion for partial summary judgment, Dkt. 48, is **DENIED**; and

(3) The matter is rereferred for consideration of future motions.

Dated this 4th day of January, 2018.

BENJAMIN H. SETTLE
United States District Judge